# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

December 7, 2017
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**WARREN E. FARMER**
**Claimant Below, Petitioner**

vs.)    **No. 17-0023** (BOR Appeal No. 2051422)
(Claim No. 2002025695)

**WEST VIRGINIA OFFICE OF**
**INSURANCE COMMISSIONER**
**Commissioner Below, Respondent**

**and**

**POINT MINING, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Warren E. Farmer, by John H. Shumate, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. West Virginia Office of the Insurance Commissioner, by Brandolyn Felton-Ernest, its attorney, filed a timely response.

The issue on appeal is whether Mr. Farmer meets the threshold for further consideration of a permanent total disability award. The claims administrator denied the application for permanent total disability on August 21, 2015. The Office of Judges affirmed the claims administrator's decision on June 17, 2016. The Board of Review affirmed the Order of the Office of Judges on December 16, 2016. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

1

Mr. Farmer was employed as a coal miner for over twenty-five years, during which time he sustained several work-related injuries. In 1972, he was electrocuted in a mine accident. Arthur Poffenbarger, M.D., stated his impression was severe electrical shock with a loss of consciousness, lacerations, and burns. Mr. Farmer experienced anxiety, insomnia, and headaches. Dr. Poffenbarger opined that the headaches were due to muscle spasms associated with soft tissue injury and not due to any neurological damage. Mr. Farmer also had post-traumatic neurosis.

On October 2, 1975, Daniel D. Opthegrove, M.D., noted that Mr. Farmer sought treatment for severe headaches and crying spells of three years duration. He was hospitalized for three weeks, during which a neurological work-up was completed. The discharge diagnosis was adjustment reaction to adult life. Mr. Farmer was prescribed medications and advised to attend group therapy.

Joseph Seltzer, M.D., performed an independent medical evaluation on November 25, 1977. Mr. Farmer complained of slight headaches as well as nervous shaking spells and dizziness. Dr. Seltzer recommended 5% permanent disability, which was mostly for the post-traumatic neurosis. On December 13, 1977, the claims administrator granted Mr. Farmer a 5% permanent partial disability award in claim number 720054892.

On March 8, 1978, William Rossman, M.D., performed an independent medical evaluation. He noted that Mr. Farmer's symptoms included headaches across the frontal and occipital area of the head and nervous tension, which included periodic shaking, tension, irritability, and some insomnia. Dr. Rossman's impression was mild psychoneurosis anxiety state related to trauma. He suggested 15% whole person impairment. The claims administrator granted Mr. Farmer an additional 5% permanent partial disability award on October 9, 1978.

Dreama Baker, a Clinical Psychologist with Raleigh Psychiatric Services, indicated in a report dated April 4, 1979, that Mr. Farmer underwent testing that indicated he was a rather cautious and wary individual who does not readily extend trust to others, and is not readily accessible on an emotional level. Ms. Baker diagnosed anxiety reaction in consequence of electrical accident. On April 4, 1979, M. K. Hasan, M.D., of Raleigh Psychiatric Services, Inc., stated his impression was an anxiety reaction with impairment being mild to moderate. Dr. Hasan recommended 5% whole person impairment. On November 15, 1979, the claims administrator's Order was set aside by the Office of Judges and Mr. Farmer was awarded a 10% permanent partial disability award, 5% for burns and 5% for psychiatric impairment, in claim number 720054892.

On April 4, 1985, R.A. Crawford, M.D., recommended that an additional 3% award, for a total of 13% permanent partial disability, be granted due to a deep scar in the right forehead and chronic callus formation on all the toes of the right foot and the great toe of the left foot. On August 12, 1984, a medical report noted the presence of a scar located on the right forehead. There was no evidence of contracture and no functional problems related to the scar. There was no evidence of visible scars on either foot, but there were large calluses located on the medial aspect of each big toe. 1% whole person impairment was assessed for the scars. Mr. Farmer was

granted an additional 1% permanent partial disability in addition to the 10% previously granted in claim number 720054892 on September 6, 1984.

On January 8, 1986, Mr. Farmer sought treatment from Kwan Ho Lee, M.D., following his injury at work. Dr. Lee reported that Mr. Farmer injured his left foot when a ram car backed over it at work on June 7, 1985. This was claim number 850058216. Mr. Farmer was diagnosed with an undisplaced fracture of the middle cuneiform bone of the left foot and placed in a cast. Dr. Lee assessed 2% whole person impairment and the claims administrator granted Mr. Farmer a 2% permanent partial disability on March 13, 1986.

Over the course of his employment, Mr. Farmer developed symptoms associated with occupational pneumoconiosis and filed a claim for benefits. On June 13, 2000, Mr. Farmer was examined by the Occupational Pneumoconiosis Board in claim number 2000044985. The Occupational Pneumoconiosis Board recommended 15% whole person impairment attributable to occupational pneumoconiosis. Significant findings were due to ventilatory studies and clinical findings made by the Board, on June 13, 2000. Chest x-rays showed insufficient pleural or parenchymal changes to establish a diagnosis of occupational pneumoconiosis. In accordance with the findings of the Occupational Pneumoconiosis Board the claims administrator granted Mr. Farmer a 15% permanent partial disability award.

On October 26, 2000, Mr. Farmer injured his right knee and filed claim number 2001024583. On March 15, 2001, Saghir Mir, M.D., evaluated Mr. Farmer for his right knee injury and diagnosed a right knee sprain of the medial collateral ligament and medial capsule as well as pre-existing early osteoarthritis of the medial compartment of the right knee. Mr. Farmer was deemed to have reached his maximum degree of medical improvement and suffered from 2% whole person impairment. In accordance with Dr. Mir's report, the claims administrator granted Mr. Farmer a 2% permanent partial disability award on June 14, 2001.

On February 4, 2004, Dr. Mir evaluated Mr. Farmer for another injury in claim number 2002025695. Dr. Mir noted that he got pinned in the mines and was treated at Appalachian Regional Hospital. X-rays were negative for fractures but revealed pre-existing arthritis in both knees especially on the medial side of the right knee. X-rays of his pelvis and hips were negative for any arthritis. After review of the medical records, test reports, surgical reports, histories, and physical examination, Dr. Mir recommended 15% impairment for the right total knee arthroplasty, 15% for the left total knee arthroplasty, 1% for the right greater trochanteric bursitis, and 1% for the left greater trochanteric bursitis, for a total of 30% whole person impairment. He apportioned 5% to pre-existing medial meniscal surgery of the right knee in 1968 and 2% for the previous right knee injury in claim 2001024583. His final total recommendation was 23% whole person impairment for the injury in this claim involving both knees and hip areas. In accordance with Dr. Mir's report, the claims administrator granted Mr. Farmer a 23% permanent partial disability award on April 5, 2004.

Clifford Carlson, M.D., evaluated Mr. Farmer on October 31, 2004, for his right knee injury in claim number 2002025695. After review of the medical records, reports, histories, and testing, Dr. Carlson concluded that Mr. Farmer suffered contusion of both knees with internal

derangement of the right knee and aggravation of degenerative changes in both knees. He subsequently underwent bilateral total knee replacement with poor result for both knees. Dr. Carlson concluded that 30% whole person impairment for the left knee and 30% whole person impartment for the right knee, less 2% prior award for the right knee would equate to a total of 28% impairment. He then combined the totals and found 50% whole person impairment for both knees.

On February 18, 2008, Mr. Farmer completed and signed a permanent total disability application. Mr. Farmer listed his employment history, treating physicians, and medications. He named twelve claims and the amounts awarded. In a permanent total disability evaluation report dated March 31, 2009, Joseph Grady, M.D., stated he examined Mr. Farmer regarding five claims. After reviewing the claims, medical records, reports and other documentation, Dr. Grady noted Mr. Farmer had a history of a non-work related right knee injury in 1968 and arm fractures in the 1950s. Dr. Grady deemed Mr. Farmer was at maximum medical improvement for all compensable injuries, though he would defer psychiatric and occupational pneumoconiosis opinions to the appropriate specialists. Dr. Grady found 15% whole person impairment for each of the two knee replacement surgeries, 1% for the right foot injury, and 1% for the right forehead scar. He stated that according to the combined values chart of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th. ed. 1993), Mr. Farmer suffered from 30% whole person impairment, excluding impairment for any psychiatric conditions or occupational pneumoconiosis.

In an April 7, 2009, report, Ahmed Faheem, M.D., of Appalachian Psychiatric Services evaluated Mr. Farmer for a psychiatric impairment rating. Dr. Faheem noted that Mr. Farmer had multiple claims and reviewed the various records related to them. Dr. Faheem performed a review of systems, psychological testing, and mental status examination. Dr. Faheem concluded that Mr. Farmer had reached maximum medical improvement and suffered no ratable impairment or condition related to the compensable injuries.

On June 10, 2010, the Permanent Total Disability Review Board issued its initial recommendations. The Permanent Total Disability Review Board determined that Mr. Farmer's whole body medical impairment from all of his occupational injuries and/or diseases was 45% based on the American Medical Association's *Guides*. The Permanent Total Disability Review Board had allowed an additional 3% impairment for each lower extremity under Table 64 of the American Medical Association's *Guides*. The Permanent Total Disability Review Board concluded that Mr. Farmer did not meet the required level of whole body medical impairment to be further considered for an award of permanent total disability and therefore recommended his application for permanent total disability be denied. The Permanent Total Disability Review Board found 1% for the forehead scar, 0% for the hip, 1% for the right foot, 15% for the left knee, 15% for the right knee, 15% for occupational pneumoconiosis, 0% for the psychiatric component, 3% for the right lower extremity, and 3% for the left lower extremity. This combined for a total of 45% whole person impairment. On July 21, 2011, the Permanent Total Disability Review Board issued its final findings which mirrored its initial findings.

4

On August 22, 2011, Mr. Farmer's application for permanent total disability was denied by the claims administrator based on the final recommendations from the Permanent Total Disability Review Board. On June 27, 2013, the Office of Judges reversed the claims administrator's decision and ordered that the claim be remanded to the Permanent Total Disability Review Board in order to comply with West Virginia Code § 23-4-6(j)(5)(2005), which requires the Permanent Total Disability Review Board to provide a written explanation for each recommendation set forth. The Office of Judges requested that the Permanent Total Disability Review Board explain how it derived an additional 6% whole body medical impairment for the lower extremities in its initial and final recommendations and for the Board to consider Mr. Farmer's post-traumatic neurosis that he suffered as a result of his electrocution injury.

The Permanent Total Disability Review Board issued another set of initial recommendations on September 9, 2013, that stated based on the evidence contained in the record at the time of this review, Dr. Grady's report was determined to be the most current and accurate assessment of Mr. Farmer's occupational injuries and/or diseases. The Permanent Total Disability Review Board clarified that the additional 3% added to each lower extremity was awarded for trochanteric bursitis, as set forth in Table 64 of the American Medical Association's *Guides*. The Permanent Total Disability Review Board also stated it found the April 7, 2009, report of Dr. Faheem as the most accurate assessment of Mr. Farmer's psychiatric impairment. The Permanent Total Disability Review Board found that Mr. Farmer sustained a total of 45% in whole person impairment, allocating the same percentages as in its previous assessment. The Permanent Total Disability Review Board concluded that Mr. Farmer did not meet the required level of whole body medical impairment. On January 13, 2014, the Permanent Total Disability Review Board issued final recommendations that mirrored its September 9, 2013, initial recommendations. The claims administrator issued a January 27, 2014, decision that denied the request for a permanent total disability award.

On May 9, 2014, the Office of Judges reversed the claims administrator's decision and reopened the claim for permanent total disability award consideration. The Office of Judges found that, without discussion, the Permanent Total Disability Review Board simply stated that Dr. Faheem's report of 0% was the most accurate assessment of Mr. Farmer's psychiatric impairment. The Permanent Total Disability Review Board further neglected to consider Mr. Farmer's post-traumatic neurosis. The Office of Judges concluded that the Permanent Total Disability Review Board erred in relying on the report of Dr. Faheem that inaccurately portrayed Mr. Farmer's psychiatric situation. The Office of Judges noted that the more reasoned reports are those of Dr. Hasan and Dr. Seltzer, who found 10% psychiatric impairment, including 5% for post-traumatic neurosis and 5% for anxiety. On November 5, 2014, the Board of Review reversed and remanded the claim to the claims administrator with instructions to refer the claim to the Permanent Total Disability Review Board for the purpose of referring Mr. Farmer for a psychiatric independent medical evaluation with a different evaluator. On October 20, 2015, this Court dismissed the appeal from the Board of Review because the claim was remanded for further development.

In accordance with the remand, a psychiatric independent medical evaluation report was issued by Mark Casdorph, M.D., on September 15, 2014. He evaluated Mr. Farmer and diagnosed adjustment disorder with mixed anxiety and depressed mood, in remission. He also diagnosed opioid use disorder which was in sustained remission. Dr. Casdorph deemed Mr. Farmer had achieved psychiatric maximum medical improvement. Utilizing the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (5th ed. 2000), he found that Mr. Farmer was fully compensated by his prior 5% permanent partial disability award. On May 11, 2015, The Permanent Total Disability Review Board adopted Dr. Casdorph's report and found 45% whole person impairment related to all compensable injuries. The Permanent Total Disability Review Board adopted its initial findings as its final recommendation on August 10, 2015. On August 21, 2015, the claims administrator denied Mr. Farmer's application for a permanent total disability award.

The Office of Judges adopted the findings of the Permanent Total Disability Review Board and found that the 45% whole person impairment did not meet the 50% whole person impairment threshold. The Board of Review adopted the findings of the Office of Judges and affirmed its Order. After review, we agree with the findings of the Office of Judges as affirmed by the Board of Review. Pursuant to West Virginia Code § 23-4-6(n)(1)(2005), a claimant must have greater than 50% whole body medical impairment to be considered for a permanent total disability award. The Permanent Total Disability Review Board found that Mr. Farmer did not meet the threshold because he only suffered from 45% whole person impairment. The medical evidence of record did not suggest that Mr. Farmer sustained more than 45% whole person impairment.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: December 7, 2017**

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker